**POLAR CORP., Plaintiff,**

v.

**The COCA–COLA CO., Defendant.**

Civ. A. No. 94–40203–NMG.

United States District Court,
D. Massachusetts.

Dec. 30, 1994.

James C. Donnelly, Jr., Charles B. Strauss, III, Mirick, O'Connell, DeMallie & Lougee, Worcester, MA, for Polar Corp.

Michael J. Michaeles, Wolfson, Dodson, Keenan & Cotton, Worcester, MA, Bruce W. Baber, Atlanta, GA, for Coca Cola Co.

### ORDER

GORTON, District Judge.

Polar Corporation ("Polar"), a manufacturer of carbonated sodas distributed in the Northeast, has filed a complaint seeking a declaratory judgment against The Coca–Cola Co. ("Coca–Cola"). Polar requests a court order declaring that it is entitled to broadcast a certain television commercial which depicts an animated polar bear throwing a can of Coca–Cola classic ("Coke") into a trash barrel labeled "Keep the Arctic Pure" and then drinking, with satisfaction, a can of Polar seltzer. The defendant, Coca–Cola, has filed a motion for a temporary restraining order (treated here as a motion for a preliminary injunction) to enjoin Polar from broadcasting the commercial and otherwise infringing or diluting Coca–Cola trademarks, including the so-called "Coca–Cola Polar Bears."

The thirty-second, television commercial at issue in this case features a computer-generated polar bear that examines a Coke can, makes an unhappy sound and flips the can over his shoulder into a trash bin. A sign over the bin reads "Keep the Arctic Pure." The polar bear then reaches down into the freezing, Arctic water and pulls out a can of Polar Seltzer. He (or she) then drinks the Polar soda and smiles contentedly.

■ To be entitled to a preliminary injunction, pursuant to Fed.R.Civ.P. 63, Coca–Cola, the moving party, must show: 1) a likelihood of success on the merits, 2) potential irreparable harm if the injunction is not granted, 3) that injury to Coca–Cola, if the injunction is denied, outweighs the harm the injunction would cause Polar, if imposed, and 4) that the public interest would not be ad-versely affected by granting the injunction. *United Steelworkers of America v. Textron, Inc.,* 836 F.2d 6, 7 (1st Cir.1987). *See also Gately v. Commonwealth,* 2 F.3d 1221, 1224 (1st Cir.1993); *Camel Hair and Cashmere Inst. of Am. v. Associated Dry Goods Corp.,* 799 F.2d 6, 12 (1st Cir.1986).

■ Coca–Cola argues that Polar's commercial violates the Lanham Act by disparaging the purity and the quality of Coke. Section 43(a) of the Lanham Act provides, in pertinent part:

Any person who ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... *in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods,* services or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such an act.

15 U.S.C. § 1125(a)(1) (emphasis added).

This Court finds that, by causing the polar bear to throw the can of Coke into a trash bin labeled "Keep the Arctic Pure," Polar has implied that Coke is not pure. Because there is no evidence suggesting that Coke is not "pure," the Court concludes that Polar has misrepresented the nature and quality of Coke. Coca–Cola has, therefore, shown a likelihood of success under 15 U.S.C. § 1125(a)(1)(B). *See Johnson & Johnson–Merck Consumer Pharmaceuticals Co. v. Rhone–Poulenc Rorer Pharmaceuticals, Inc.,* 19 F.3d 125, 129 (3d Cir.1994). *See generally* Note, *To Tell the Truth: Comparative Advertising and the Lanham Act Section 43(a),* 36 Cath.U.L.Rev. 565 (1987) (describing how the Lanham Act evolved to create a cause of action against false advertising).

■ The Court further finds that Coca–Cola, engaged in an industry that relies heavily on the consumer's perception of quality and purity, has shown a potential for irreparable harm if the injunction is not

granted. Moreover, that harm outweighs any injury that Polar would suffer as a result of the injunction, especially because Polar, in effect, would be enjoined only from misrepresenting the nature and quality of Coke. Finally, the public interest would not be adversely affected by the issuance of an injunction.

Accordingly, this Court concludes that Coca–Cola has met its burden under Fed. R.Civ.P. 65 and is entitled to a preliminary injunction. Therefore, Coca–Cola's motion for preliminary injunction sought pursuant to paragraph (a) of its proposed order is ALLOWED, and this Court ORDERS that:

> Polar, its officers, agents, servants, employees and attorneys, and those persons in active concert or participation with Polar during the pendency of this action are enjoined from broadcasting, causing to be broadcast, publishing, disseminating or distributing, in any way, directly or indirectly, the television commercial for Polar brand soft drinks that features a polar bear discarding a Coke can into a trash barrel.

Pursuant to Fed.R.Civ.P. 65(c), this Court further ORDERS Coca–Cola to post, forthwith, a bond of Fifty Thousand Dollars ($50,-000) as security for the preliminary injunction hereby entered.

Because the Court understands that Coca–Cola has withdrawn its motion to enjoin Polar's use of the animated polar bear, and because Coca–Cola has made an insufficient showing to merit a broader injunction, the remainder of Coca–Cola's motion for preliminary injunction sought pursuant to paragraphs (b) through (e) of its proposed order is DENIED.

SO ORDERED.